**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JANE DOE (A.A.M.),<br><br>    **Plaintiff,**<br><br>    v.<br><br>WYNDHAM HOTELS & RESORTS, INC., *et al*.,<br><br>    **Defendants.** | Civil Action No.: 24-11502 (ES) (JRA)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court are four motions to dismiss Plaintiff Jane Doe (A.A.M.)'s ("Plaintiff") Complaint, (D.E. No. 1 ("Complaint" or "Compl.")): (i) defendants Days Inns Worldwide, Inc. and Wyndham Hotels & Resorts, Inc.'s (collectively, the "Wyndham Defendants") motion to dismiss, (D.E. No. 23 ("Wyndham Motion"); D.E. No. 23-1 ("Wyndham Mov. Br.")); (ii) defendants Hotel OM Sai Ram, LLC and Ashvin Kumar Patel's motion to dismiss, (D.E. No. 65); (iii) defendant SG Hospitality, LLC d/b/a Days Inn's ("SG Hospitality") motion to dismiss, (D.E. No. 67); and (iv) defendants D. Laxmi, Inc. ("D. Laxmi") and Ashvin Kumar Patel's motion to dismiss, (D.E. No. 86).[1]  The Court refers to Defendants Hotel OM Sai Ram, LLC, SG Hospitality, and D. Laxmi collectively as the "Franchisee Defendants," and to their motions, (D.E. Nos. 65, 67, and 86), as the "Franchisee Defendants' motions to dismiss."

---

[1]     Because Plaintiff has voluntarily dismissed Defendant Ashvin Kumar Patel, (*see* D.E. No. 119; *see also* D.E. No. 138), the Court addresses D.E. No. 67 and D.E. No. 86 only as to Defendants Hotel OM Sai Ram, LLC and D. Laxmi, respectively.

The Court has carefully considered the parties' submissions in connection with the four motions, as well as the balance of the record, and decides the matters without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated herein, Franchisee Defendants' Motions to Dismiss, (D.E. Nos. 65, 67, & 86), are each **GRANTED IN PART** and **DENIED IN PART**. This Court transfers the instant matter to the United States District Court for the Western District of Texas.

## I.   BACKGROUND

### A.   Factual Background

Congress enacted the Trafficking Victims Protection Reauthorization Act ("TVPRA") to combat human trafficking and provide both criminal penalties and civil remedies for victims of the same. 18 U.S.C. §§ 1581–97. Among its provisions, 18 U.S.C. § 1591 ("Section 1591") establishes criminal liability for sex trafficking, while 18 U.S.C. § 1595 ("Section 1595") provides a private right of action for victims. In particular, Section 1595 provides that an individual who is a victim of a TVPRA violation may bring a civil action against the perpetrator or against any person who knowingly benefits, financially or by receiving anything of value, from participation in a venture that the person knew or should have known engaged in trafficking in violation of the statute. *See* Section 1595(a).

This case is one of several filed in this District seeking similar redress under the TVPRA for alleged sex trafficking in hotels located in various cities. Plaintiff alleges that between January 2010 and December 2014, she was sex trafficked in two Days Inn hotels located in San Antonio, Texas and Houston, Texas. (Compl. ¶¶ 37–42). Plaintiff alleges that, when her abusers trafficked her at these locations, "hotel rooms would be paid for in cash or prepaid card, she would not leave the room, she had few or no personal items, the do not disturb sign was constantly on the door to

2

the room being used, housekeeping was constantly refused, and there was constant heavy foot traffic in and out of her room involving men who were not hotel guests." (*Id*. ¶ 43).

Plaintiff claims that the Wyndham Defendants, along with Franchisee Defendants, "owned, operated, controlled and/or managed" the subject Days Inn hotels and facilitated Plaintiff's sexual exploitation. (*Id*. ¶ 18). She alleges that the relationship between sex trafficking and the hotel industry is "widely known and pervasive," (*Id*. ¶ 45–47), and that "Wyndham's public statements confirm that it knew sex trafficking was a problem at its hotels." (*Id*. ¶ 61). Moreover, Plaintiff claims that "each of the Wyndham Brand Defendants monitored criminal activity occurring at its branded hotels and were aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the specific property where [Plaintiff] was trafficked." (*Id*. ¶ 67).

## B. Procedural History

On December 30, 2024, Plaintiff initiated this lawsuit against several defendants,[2] alleging violations of Sections 1591 and 1595 of the TVPRA. In Count I of the Complaint, Plaintiff alleges that the Franchisee Defendants are liable as perpetrators under Section 1595(a). (*Id*. ¶¶ 201–03). In Count II, Plaintiff asserts that all Defendants are liable as beneficiaries under Section 1595(a) for the financial benefits derived from their participation in a venture violative of the TVPRA. (*Id*. ¶¶ 204–09). Finally, in Count III Plaintiff contends that the Wyndham Defendants are vicariously liable for the acts of their franchisees and those of the franchisees' subagents. (*Id*. ¶¶ 210–15).

---

[2] The Complaint was originally filed against eleven Defendants: Wyndham Hotels & Resorts, Inc.; Days Inn Worldwide, Inc.; AMBM Investment Company, LLC; Binu George; Michael Abraham; SG Hospitality, LLC; MMSD Corporation; D. Laxmi, Inc.; Ashvin Kumar Patel; Kantilal Patel; and Hotel OM Sai Ram, LLC. (*See generally* Compl.). Plaintiff thereafter voluntarily dismissed his claims against Defendants Binu George and AMBM Investment Company, LLC, (D.E. No. 40), Michael Abraham, (D.E. Nos. 73 & 74), Ashvin Kumar Patel and Kantilal Patel, (D.E. No. 119), and MMSD Corporation, (D.E. No. 136). The remaining Defendants are thus Wyndham Hotels & Resorts, Inc.; Days Inn Worldwide, Inc.; SG Hospitality, LLC; D. Laxmi, Inc.; and Hotel OM Sai Ram LLC.

Following Plaintiff's commencement of this action, Defendants filed the present motions to dismiss. (*See* D.E. Nos. 23, 65, 67, & 86). On February 25, 2025, the Wyndham Defendants moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* the Wyndham Motion). Plaintiff opposed the motion, (D.E. No. 29), and the Wyndham Defendants filed a reply, (D.E. No. 37).

On April 22, 2025, Defendant Hotel OM Sai Ram, LLC moved to dismiss the Complaint under Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. (D.E. No. 65). Plaintiff opposed, (D.E. No. 72), and Defendant Hotel OM Sai Ram, LLC filed a reply, (D.E. No. 75).

On April 25, 2025, Defendant SG Hospitality moved to dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6), arguing that this Court lacks personal jurisdiction, venue is improper, and Plaintiff fails to state a claim against it. (D.E. No. 67). Plaintiff opposed, (D.E. No. 71), and SG Hospitality filed a reply, (D.E. No. 76).

On June 20, 2025, Defendant D. Laxmi moved to dismiss under Rules 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim. (D.E. Nos. 86 & 87). Plaintiff opposed. (D.E. No. 92).[3] Defendant D. Laxmi did not reply.

The motions are therefore all now ripe for adjudication.

## II. Legal Standard[4]

Under Rule 12(b)(2), the Court may dismiss a complaint for lack of personal jurisdiction. When reviewing a motion to dismiss under Rule 12(b)(2), courts "must accept all of the plaintiff's

---

[3]     Plaintiff appears to have filed her opposition to Defendant D. Laxmi's motion to dismiss twice. (*See* D.E. Nos. 91 & 92). As best the Court can discern, the two oppositions are identical.

[4]     Because this Court does not reach the merits of the Wyndham Defendants' motion, nor the Rule 12(b)(6) arguments raised in the Franchisee Defendants' motions, it omits the Rule 12(b)(6) standard from this section.

allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Rather, the plaintiff need only present "a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Id.* at 1223 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Once the plaintiff meets this burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank*, 954 F.2d at 150.

## III.    Discussion

Franchisee Defendants contend that the Court should dismiss Plaintiff's Complaint against them for lack of personal jurisdiction. (*See generally* Franchisee Defendants' motions to dismiss). A federal court engages in a two-step inquiry to determine whether it may exercise personal jurisdiction. First, the court must determine whether the relevant state long-arm statute permits the exercise of jurisdiction; second, the court must then satisfy itself that the exercise of jurisdiction comports with due process. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4–4(c)). Under the Constitution, personal jurisdiction can be established either through general or specific jurisdiction. *See Bristol-Myers Squibb v. Superior Ct. of Cal.*, 582 U.S. 255,

262 (2017).  Franchisee Defendants assert that the Court has neither general nor specific jurisdiction over them.  (*See generally* the Franchisee Defendants' motions to dismiss).  The Court will address each argument in turn.[5]

### A.        General Jurisdiction

The Franchisee Defendants first argue that Plaintiff fails to establish that they are "at home" in New Jersey for purposes of general personal jurisdiction.  (*See* D.E. No. 65-4 at 8–10; D.E. No. 67-5 at 10–13; D.E. No. 87 at 13–14 (ECF Pagination)).  A district court may exercise general jurisdiction when a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home."  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  The Supreme Court has observed that "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'"  *Daimler*, 571 U.S. at 137 (citation omitted).  "General jurisdiction over a limited liability company only tends to exist in its state of citizenship."  *Canal Ins. Co. v. Fema Trucking, LLC*, No. 20-17953, 2022 WL 3227188, at *4 (D.N.J. Aug. 20, 2022).  Likewise, the United States Court of Appeals for the Third Circuit has recognized that "it is 'incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business.'"  *Malik v. Cabot Oil & Gas Corp.*, 710 F.

---

[5]      If the court does not hold an evidentiary hearing, a plaintiff need only present "a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'"  *Mellon Bank*, 960 F.2d at 1223 (quoting *Provident Nat'l Bank*, 819 F.2d at 437).  The governing standard, then, is similar to that on an ordinary Rule 12(b)(6) motion to dismiss, which is directed to the face of the pleadings plus documents of which the court may properly taken notice.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").  Here, the Franchisee Defendants attached several exhibits and declarations to their motions to dismiss, each in support of their argument that this Court may not properly exercise personal jurisdiction over them.  (*See* D.E. Nos. 65-2–3; 67-2–4; & 86-3–5).  Because the Court holds that Plaintiff has not met her burden to present a prima facie case for the exercise of personal jurisdiction, as explained herein, the Court does not reach the question of whether it can—or should—properly consider the Franchisee Defendants' declarations and exhibits at this stage.

App'x 561, 564 (3d Cir. 2017) (quoting *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016)) (citation modified).

Here, the Court lacks general jurisdiction over the Franchisee Defendants. None of the Franchisee Defendants are incorporated in New Jersey, nor do they maintain their principal place of business in this State. Defendants Hotel OM Sai Ram, LLC and SG Hospitality are limited liability companies organized under the laws of Texas with their principal places of business in Texas. (D.E. No. 65-4 at 9; D.E. No. 67-5 at 12). Defendant D. Laxmi is a Texas corporation with its principal place of business in the same. (D.E. No. 87 at 13–14 (ECF Pagination)). These Defendants are thus "at home" in Texas—not New Jersey. Plaintiff also fails to allege facts suggesting that this is an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. Accordingly, this Court lacks general jurisdiction over the Franchisee Defendants. [6]

**B.        Specific Jurisdiction**

The Franchisee Defendants next argue that this Court lacks specific jurisdiction over them. In response, Plaintiff argues that (i) the Franchisee Defendants purposely directed their activities at New Jersey through its business relationship with the Wyndham Defendants, (D.E. No. 71 at 7–10; D.E. No. 72 at 6–9; D.E. No. 92 at 6–9); (ii) the Franchisee Defendants reached beyond their home state to establish an ongoing business relationship tied to New Jersey, as the franchise agreements included a New Jersey choice-of-law clause and a forum-selection provision requiring disputes to be resolved in New Jersey and the agreement contemplated continuing contacts with New Jersey, including the routine submission of operational reports, royalty payments, and other

---

[6]      Plaintiff concedes that this Court lacks general jurisdiction over the Franchisee Defendants. (*See* D.E. Nos. 71 at 5 n.2; 72 at 4 n.2; 92 at 6 n.4).

communications to Wyndham in New Jersey, (D.E. No. 71 at 9; D.E. No. 72 at 8; D.E. No. 92 at 7); (iii) the Franchisee Defendants' contacts with New Jersey relates to multiple elements of her beneficiary claim, including the alleged financial benefits, participation in the trafficking ventures, and knowledge of trafficking; (iv) the burden shifts to the Franchisee Defendants to show that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice, and the Franchisee Defendants have failed to make the required showing; and (v) New Jersey has a "strong interest in regulating the relevant conduct." (*Id.*). In reply, the Franchisee Defendants contend that Plaintiff offers only a weak connection between the Franchisee Defendants, New Jersey, and Plaintiff's sexual trafficking allegations. (D.E. No. 75 at 4). Specifically, the Franchisee Defendants argue that the alleged contacts—such as payment processing through New Jersey systems, obligations under a New Jersey-governed franchise agreement, and remittance of funds to a New Jersey franchisor—are too attenuated to show that Plaintiff's claims arise out of or relate to the forum. (*Id.* at 5; D.E. No. 76 at 3). As such, they contend that these contacts fall short of the "strong relationship" required for specific jurisdiction.

Specific jurisdiction arises from "an 'affiliation between the forum and the underlying controversy,'" and a district court exercising specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation modified). To determine whether specific jurisdiction is appropriate, courts must conduct a three-pronged test. First, the defendant must have "'purposefully directed' his activities at the forum." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to at least one of those specific activities." *Id.* (citation modified). The Court notes the "central concern" of the second

8

prong is "the relationship among the defendant, the forum, and the litigation." *Daimler*, 571 U.S. at 126 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 197 (1977)).  Third, if the prior two requirements are met, a court must consider whether the exercise of jurisdiction otherwise comports with "'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (citation omitted).

Turning to the first prong, the Court finds that the Franchisee Defendants purposefully availed themselves of this forum by entering a franchising relationship with the Wyndham Defendants.  *See Burger King*, 471 U.S. at 480–82.  In *Burger King*, the Supreme Court held that a nonresident franchisee had sufficient minimum contacts with Florida even though its only physical connection to the state was attending a brief training course. *Id.*  The Court reasoned that the franchisee established a substantial connection with Florida by reaching out to form a long-term franchise relationship with a Florida franchisor and by engaging in ongoing obligations that tied the parties' relationship to the forum. *Id.* at 478–83.  Similarly, by entering into an ongoing franchise relationship with a New Jersey-based franchisor that required regular operational coordination, the Franchisee Defendants purposefully availed themselves of the benefits of conducting activities in New Jersey. *See also Doe (S.A.T.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-11511, 2025 WL 2848587 at *3 (D.N.J. Oct. 8, 2025) ("Here, Franchisee LLC purposefully availed itself of this forum by entering a franchising relationship with [the] Franchisor Defendants.").

Turning to the second prong, the Court finds instructive the reasoning in *Doe (S.A.T)*, a similar case in this District involving materially indistinguishable allegations against a franchisee defendant.  There, applying *Bristol-Myers*, the court held that the plaintiff failed to satisfy the relatedness requirement where the conduct underlying the claim—namely, the alleged trafficking activity—occurred outside the forum notwithstanding the franchisee's ongoing business

relationship with a forum-based franchisor and its use of forum-based systems. 2025 WL 2848587, at * 4 (citing *Bristol-Myers*, 582 U.S. at 259); *see id*. ("Although Franchisee LLC may have used the Wyndham Defendants' systems in carrying out certain actions, the conduct at the core of the alleged ventures, namely, the rental of rooms to sex traffickers, occurred in Texas. (citation modified)). Thus, the Court held that "the connection between the conduct underlying Plaintiff's claim and this forum [was] too attenuated to find specific personal jurisdiction." *Id.*; *see also Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2026 WL 308896 (D.N.J. Feb. 5, 2026) (applying the *Doe (S.A.T.)* reasoning to hold that the court lacked personal jurisdiction over the franchisee defendants). The court further emphasized that such contacts standing alone were insufficient to establish specific jurisdiction. *Id.* ("Plaintiff's reliance on Franchisee LLC's routine interactions with Wyndham by virtue of their ongoing business relationship also does not constitute a strong connection to Plaintiff's venture claim. Jurisdiction must be established on the basis of *each* defendant's own contact with a given forum." (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014))).

The Court finds that reasoning persuasive and applicable here. As in *Doe (S.A.T)* and *Doe (M.J.J.)*, the alleged conduct at the core of Plaintiff's claims occurred outside New Jersey, and the Franchisee Defendants' routine interactions with a New Jersey-based franchisor do not establish the requisite connection to the forum. As the Court therefore finds that the Franchisee Defendants are not subject to personal jurisdiction in this District with respect to Plaintiff's claims, the Court need not address the third prong of the specific jurisdiction inquiry.

## C.        Transfer is Appropriate

As the Court has found that it lacks personal jurisdiction over the Franchisee Defendants, it must now determine the appropriate disposition of the claims against them. The Third Circuit

has made clear that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Indeed, pursuant to 28 U.S.C. § 1631 ("Section 1631"), when a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." Moreover, 28 U.S.C. § 1404(a) ("Section 1404(a)") permits a court to *sua sponte* transfer a civil action from one proper venue to another proper venue. *Doe (S.A.T.)*, 2025 WL 2848587 at *5 (first citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); then citing *Sondhi v. McPherson Oil Co.*, No. 20-13986, 2021 WL 5356182, at *4 (D.N.J. Nov. 17, 2021)). "Conversely, Section 1406 [28 U.S.C. § 1406] applies when the original venue is improper." *Id.* (citing *Jumara*, 55 F.3d at 878).

The Court holds that venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 ("Section 1391") and therefore will analyze the propriety of a transfer pursuant to Section 1404(a).[7]  That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The purpose

---

[7]    In so holding, the Court adopts the reasoning of several of its colleagues in this District on related TVPRA claims brought against Wyndham and its franchisees.  *See, e.g.*, *Doe (S.A.T.)*, 2025 WL 2848587, at *5 (holding (i) that the Court lacked personal jurisdiction over the franchisee defendants; (ii) that venue was proper in the District of New Jersey, such that Section 1404(a) applied; and transferring the entire matter to the Northern District of Texas); *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 25-1550, 2025 WL 3754148 (D.N.J. Dec. 24, 2025) (finding venue in the District of New Jersey appropriate because "[t]he relationship between [Franchisee Defendant], enforcing Wyndham's polices, and Wyndham, setting the policies, cannot be separated from the harm alleged. Their franchising agreement directed how [Franchisee Defendant] would be paid, what Wyndham's cut would be, how payments would be processed back in New Jersey, and additionally outlined when and how [Franchisee Defendant] must report suspected sex trafficking to Wyndham. And Wyndham's corporate decision-making—which includes decisions related to its policies, reporting requirements, and its supervision and training of [Franchisee Defendant]—and its profit-sharing from its corporate headquarters in New Jersey mean that a 'substantial part of the events or omissions giving rise to' [Plaintiff's] claims occurred here." (citation modified)).  The Court accordingly holds that the District of New Jersey is a proper venue pursuant to Section 1391(b), as it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

11

of Section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (internal quotation marks omitted). Accordingly, when considering transfer pursuant to Section 1404(a), a court must determine: (i) whether the proposed forum is one in which plaintiff could have originally brought suit (or one to which the parties have consented), and (ii) whether transfer would be in the interest of justice and for the convenience of parties and witnesses. *Id.* As to the former, the Court finds that Plaintiff could have originally filed this action in the Western District of Texas, as a "substantial part of the events . . . giving rise" to Plaintiff's claim occurred there. 28 U.S.C. § 1391(b). The Court must next determine whether transfer to that District would be "in the interest of justice" and serve the "convenience of parties and witnesses." 28 U.S.C. § 1404(a).

In performing this analysis, courts in the Third Circuit consider all "relevant public and private interests." *Santi v. Nat'l Bus. Recs. Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing *Jumara*, 55 F.3d at 879). Those private interests typically include: (i) the plaintiff's forum preference; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties; (v) the convenience of the witnesses; and (vi) the location of books and records. *Jumara*, 55 F.3d at 879 (citations omitted). The relevant public interests include (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty in the two fora from court congestion; (iv) the local interest in deciding controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80 (citations omitted). Courts have broad discretion when resolving a Section 1404(a)

motion to transfer, and must consider "convenience and fairness . . . on a case-by-case basis." *Santi*, 722 F. Supp. 2d at 606; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Court finds that, on balance, the relevant public and private interests favor transferring this matter. The record reflects that Plaintiff lives in Texas and the Franchisee Defendants are limited liability corporations and corporations with their principal places of business each in Texas. (Compl. ¶¶ 10–29). Critically, as the hotels at issue in this case are located in Texas, most of the activities underlying Plaintiff's claims occurred in Texas. (*See* Compl. ¶¶ 38 & 39). In turn, it is likely that witnesses and evidence related to the alleged trafficking at issue are also in Texas. Further, this Court is confident that Texas has "an interest in deciding this matter." *Doe (S.A.T.)*, 2025 WL 2848587, at *5. As my colleagues in this District have held:

> Taking into account judicial economy and the TVPRA's purposes of combatting trafficking, ensuring "just and effective punishment of traffickers," and victim protection, this Court deems the transfer of this case to the United States District Court for the Northern District of Texas proper. H.R. Conf. Rep. No. 106-939, at 3 (2000); *see Doe v. Choice Hotels Int'l, Inc.*, No. 24-1598, 2025 WL 2108792, at *12 (D. Md. July 28, 2025) ("[T]he [c]ourt finds that its lack of personal jurisdiction over [franchisee] GP4, a key party in this litigation, strongly counsels in favor of transferring this case to the Middle District of Florida, a proper venue where, as acknowledged at the hearing by Defendants, personal jurisdiction would exist over both GP4 and [franchisor] Choice."); *Doe v. Choice Hotels Int'l, Inc.*, No. 24-2836, 2025 WL 2430024, at *6–7 (D. Md. Aug. 22, 2025) (affording minimal weight to the plaintiff's choice of venue where the alleged trafficking occurred in Wisconsin, the same state as Plaintiff's domicile, and transferring the case to Wisconsin).

*Id.* Judicial economy concerns also favor transfer, as the alternative would involve splitting Plaintiff's claims between two fora. The Court finds that most of the remaining public interest factors (e.g., enforceability of a judgment, judicial familiarity with state law, etc.) are neutral to the analysis. Accordingly, this Court concludes that transfer to the United States District Court for the Western District of Texas is warranted.

## IV.    Conclusion

For the foregoing reasons, the Franchisee Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.  The Court concludes that it lacks personal jurisdiction over the Franchisee Defendants.  Rather than dismissing Plaintiff's claims against the Franchisee Defendants, however, the Court finds a transfer to the United States District Court for the Western District of Texas is appropriate.  The Court will therefore transfer this matter, *sua sponte*, to that District pursuant to 28 U.S.C. § 1404(a).  In light of this transfer, the Court does not address the merits of the Wyndham Defendants' motion to dismiss under Rule 12(b)(6).  The Wyndham Defendants may re-file that application, post-transfer, at the direction of the Western District of Texas.  An appropriate Order accompanies this Opinion.

**Date**: April 27, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**